# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

JUL 2 5 2002

| | |
|---|---|
| Cheryl Patterson, Jeffrey Antone, Samuel Scaife, Bernard Littleton, Martin Schaeffer, Darlene James and Rosa Price, and all others similarly situated, | ) ) ) ) |
| Plaintiffs | ) ) Case No. 01 C 9557 |
| -vs- | ) Judge Hibbler ) |
| Michael J. Sheehan, in his official capacity as Sheriff of Cook County, Illinois, the County of Cook, a unit of local Government, et.al. | ) ) ) ) |
| Defendants | ) |

FILED

JUL 2 4 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:     Gregory Vaci
        Assistant States Attorney
        500 Daley Center
        Chicago, Illinois 60602
        (312) 603-3369

Please take notice that on July 24, **2002** I will file with the Clerk of the U.S. District Court the following and attached document: Plaintiff's First Amended Complaint, a copy of which is hereby served upon you.

Luke A. Casson
ANDREOU & CASSON, LTD.
332 South Michigan Ave., Suite 1144
Chicago, Illinois 60604
(773) 251-9309

## PROOF OF SERVICE

The undersigned, an attorney, under penalties as provided by law pursuant to Ill. Rev. Stat. Chap. 110 Sec. 1-109, hereby certify and state that the attached documents were sent to the designated attorneys by depositing same in the U.S. Mail at Chicago, Illinois, 60604, before 5:00 p.m., with proper postage prepaid on this 24th day of July, 2002.

_____
                                        Luke A. Casson

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Cheryl Patterson, Jeffrey Antone, Samuel
Scaife, Bernard Littleton, Darlene James,
Rosa Price, Debra Higens, Larry Parker,
David Walker, and all others similarly
situated,

        Plaintiffs,

vs.

Michael J. Sheahan, in his official capacity as
Sheriff of Cook County, Illinois, the County
of Cook, a unit of local Government, Randy
Pietrowski, Henrique Campillo, David
Devane, William Wallace, Michael Ricci,
Greg Shields, in their individual capacity,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DOCKETED**

JUL 2 5 2002

Case No. 01 C 9557

Honorable Judge Hibbler
Magistrate Judge Bobrick

JURY TRIAL DEMANDED

*FILED*

JUL 2 4 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### FIRST AMENDED COMPLAINT

Plaintiffs, by their attorneys, complain against Defendants, Sheriff Michael Sheahan in
his official capacity, Cook County, Randy Pietrowski, Henrique Campillo, David Devane,
William Wallace, Greg Shields and Michael Ricci, in their individual and official capacities, and
state as follows:

### NATURE OF THE ACTION

1.     Plaintiffs bring this action to redress acts of racial harassment, race
discrimination, disability discrimination, sexual harassment, sex discrimination, and retaliation
for opposing and complaining about unlawful conduct, including but not limited to harassment,
discrimination, retaliation, and unfair labor practices, and for deprivation of equal protection and
violations of their right to free speech.

2.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. §2000e et seq. ("Title VII"), the Americans with Disabilities Act, the Civil
Rights Act of 1991, 42 U.S.C. §1981A, under 42 U.S.C. §1981, and 42 U.S.C. § 1983, 27 U.S.C.
§207, and 29 U.S.C. §158.



3.    Plaintiffs bring these claims on behalf of themselves and further allege a general pattern, practice, policy and custom of discrimination against African American employees, female employees based on their gender, disabled employees and employees whom Defendants perceived as disabled, and retaliation against those who oppose unlawful conduct in the Cook County Sheriff's Department and subjected employees to unequal conditions of employment, transfer, promotion and pay

## JURISDICTION AND VENUE

4.    The jurisdiction of this Court is conferred and invoked pursuant to 28 U.S.C. §§ 1343, 42 U.S.C. §§1981, 1983 and 12220, 29 U.S.C. §§158 et seq., and 207, the First and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §1367(a).  This Court has jurisdiction over Counts III, V, VII and VIII pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 28 U.S.C. §1331; over Count VII under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq.; over Counts II, IV, and VI pursuant to 42 U.S.C.§1983 and 28 U.S.C. §1343, over Count IX pursuant to 29 U.S.C. §158, and Count X pursuant to 29 U.S.C. §207.

5.    Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because Plaintiffs and all of the Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiffs' claims occurred within this district.

## PARTIES

6.    Plaintiff Cheryl Patterson, is an African American female citizen of the United States who resides in Cook County, Illinois.

7.    Plaintiff Rosa Price is an African American female citizen of the United States who resides in Cook County, Illinois.

8.    Plaintiff Samuel Scaife is an African American male citizen of the United States who resides in Cook County, Illinois.

9.    Plaintiff Bernard Littleton is an African American male citizen of the United States who resides in Cook County, Illinois.

10.    Plaintiff Jeffrey Antone is a white male citizen of the United States who resides in Cook County, Illinois.

11.     Plaintiff Darlene James is a white female citizen of the United States who resides in Cook County, Illinois.

12.     Plaintiff Debra Higens, is a white female and a citizen of the United States who resides in Cook County, Illinois.

13.     Plaintiff Larry Parker is an African American male citizen of the United States who resides in Cook County, Illinois.

14.     Plaintiff David Walker is an African American male citizen of the United States who resides in Cook County, Illinois.

15.     Defendant Cook County is a municipality incorporated under the laws of the State of Illinois.  Cook County administers itself through departments, one of which is the Cook County Sheriff's Department ("Sheriff's Department").

16.     At all relevant times, Defendant Cook County, through the Sheriff's Department, has been continuously engaged in an industry affecting commerce.

17.     At all relevant times and currently, Defendant Michael F. Sheahan ("Sheriff Sheahan") served in the elected position of Sheriff of Cook County, Illinois.

18.     Defendant David Devane ("Devane") is employed by Cook County through the Cook County Sheriff's Department.  He is sued in his individual capacity.  At all relevant times, Defendant Devane served as the Executive Director of the Department of Community Supervision and Intervention ("DCSI"), which houses the Electronic Monitoring Unit ("EMU").

19.     Defendant William Wallace ("Wallace") is employed by Cook County through the Cook County Sheriff's Department.  He is sued in his individual capacity.  At all relevant times, Defendant Wallace served as the Deputy Executive Director of DCSI.

20.     Defendant Randy Pietrowski ("Pietrowski") is sued in his individual capacity.  At all relevant times, Defendant Pietrowski has been employed by Cook County through the Cook County Sheriff's Department and served as the Deputy Director of EMU.

21.     Defendant Henrique Campillo is sued in his individual capacity.  At all relevant times, Defendant Campillo has been employed by Cook County through the Cook County Sheriff's Department and served as the Deputy Chief of EMU and oversaw day-to-day operations of the Unit.

22.     Defendant Michael Ricci is sued in his individual capacity. At all relevant times, Defendant Ricci was employed by Cook County through the Cook County Sheriff's Department and served as a Deputy Chief in EMU.

23.     Defendant Greg Shields is sued in his individual capacity. At all relevant times, Defendant Shields was employed by Cook County through the Cook County Sheriff's Department and served as a supervisor in EMU.

24.     Defendant Michael Sheehan and the individually named Defendants, Devane, Wallace, Pietrowski, Campillo, Ricci, and Shields, were all employed by the Cook County Sheriff and served in supervisory and policy-making positions.

## BACKGROUND

25.     Plaintiffs bring these claims to remedy systemic discrimination and harassment against employees based on race, gender, and disability, and retaliation against those who complain about Defendants unlawful conduct.

26.     As described below, Defendants have discriminated against Plaintiffs and other African American employees based on their race and association and support of African American employees, have failed to institute practices to prevent race discrimination and harassment, and have created and tolerated a work environment which is discriminatory against African American employees, including Plaintiffs, in ways including but not limited to the following:

a.     Failing to promote African American employees to positions for which they are qualified;

b.     Deterring and preventing African American employees from applying for promotions;

c.     Subjecting African American employees to disproportionate and unwarranted scrutiny and discipline;

d.     Permitting supervisors and other employees to refer to African American employees as "nigger;"

e.     Treating African American employees in a hostile fashion;

f.     Applying discriminatory standards to African American employees regarding appointments and reappointments to senior positions;

g.     Assigning African American employees heavier and more difficult work loads;

h.     Discriminating against African American employees with respect to training, advancement opportunities, and disciplinary action;

i.     Offering accommodations for white employees after the closing of the Permissions office, which were not similarly offered to the Plaintiffs Patterson, Scaife, Price, Antone, Littleton;

j.    Discrimination against African American employees in the terms and conditions of their employment; and

k.    Retaliating against African American employees who opposed and complained about race discrimination and the racially hostile work environment.

27.    As described below, Defendants have discriminated against female Plaintiffs and other female employees, have failed to institute practices to prevent retaliation and harassment, and have created and tolerated a hostile work environment against female employees in ways including but not limited to the following:

a.    Subjecting female employees to pornographic pictures and magazines and refusing to remove such material after complaints were made about such offensive material;

b.    Failing to promote female employees based on their gender;

c.    Deterring female employees from applying for promotions;

d.    Subjecting female employees to disproportionate and unwarranted scrutiny and discipline;

e.    Permitting supervisors and other employees to refer to female employees as "bitches," "c_nts," and other derogatory terms;

f.    Treating female employees in a hostile fashion and subjecting them to a hostile work environment;

g.    Applying discriminatory standards to female employees regarding appointments and reappointments to senior positions;

h.    Assigning female employees to dangerous and often life threatening conditions and more difficult work loads;

i.    Discriminating against female employees with respect to training, advancement opportunities, assignments, and disciplinary action; and

j.    Retaliating against female employees who opposed and complained about gender discrimination and hostile work environment.

28.    As described below, Defendants have retaliated against Plaintiffs and other employees who have opposed and complained of Defendants' unlawful employment practices and unlawful conduct, have failed to institute practices to prevent retaliation, and have created and tolerated a work environment which is retaliatory against employees who oppose Defendants' unlawful conduct, including Plaintiffs, in ways including but not limited to the following:

a.    Subjecting Plaintiffs and other employees who have complained to unwarranted and disproportionate disciplinary action;

b.    Subjecting Plaintiffs and other employees who have complained to retaliatory terms and conditions of their employment;

      c.     Defendant Sheriff's Department's Office of Inspector General, which is charged in part with investigating complaints of sexual harassment, discrimination, has a pattern and practice of intimidating complainants and witnesses by making such statements as it is their job to "make the sheriff look good," and failing to conduct investigations in good faith;

      d.     Covering up and conspiring with witnesses to lie and falsify documents to conceal Defendants' unlawful practices;

      e.     Bringing witnesses up on false charges in retaliation for opposing the unlawful and discriminatory conduct;

      f.     Applying retaliatory standards to appointments and reappointments to senior positions;

      g.     Assigning Plaintiffs and other employees who have complained to dangerous and often life threatening conditions and more difficult work loads;

      h.     Singling out Plaintiffs and other employees who complained for harassment and retaliation for filing lawful union grievances and received threats not received by other white officers; and

      i.     Denying Plaintiffs and other employees who have complained training, advancement opportunities, and assignments given to similarly situated employees who have not complained.

29.     Title 29, Section 158 of the United States Code prohibits the interference or restraint of employees in the exercise of their rights and to discharge or otherwise discriminate against an employee because he has filed charges or given testimony.

30.     Plaintiffs filed grievances with the Defendant County of Cook and testified in support of their various grievances.

31.     The Plaintiffs suffered discrimination, discipline and transfer, thus altering their terms and conditions of employment for filing grievances and complaining about the Employers discriminatory practices and conduct.

32.     Defendants acted knowingly and willfully in violating the well established rights of Plaintiffs and engaged in retaliatory conduct to punish Plaintiffs for filing lawful union grievances.

33.     The conduct alleged herein constitutes a pattern, custom, and practice of discrimination against African Americans, women based on their gender, and disabled individuals and those perceived as disabled, and retaliation against those opposing unlawful employment practices and unlawful conduct by Cook County, through the Cook County Sheriff's Department, with respect to promotions, training, transfers, terms and conditions of employment, work environment, advancement opportunities and conduct relating to discipline and termination. All of Defendants' employment practices as alleged herein are undertaken with

discriminatory intent. This conduct constitutes an official policy or custom of the Cook County Sheriff's Department, which has adversely affected Plaintiffs and violated their constitutional right to make and enforce contracts under 42 U.S.C. §1981, violated their equal protection and first amendment rights under 42 U.S.C. § 1983, and violated their rights under Title VII, 42 U.S.C. § 2000e, et seq.

34.    Defendants' promotion and appointment practices utilize needlessly subjective standards, are based on political clout and affiliation, and have a disparate impact upon African-American and female employees, including the plaintiffs. In many instances, Defendants' promotion and appointment practices effectively preclude black and female applicants and potential applicants from even competing for open positions.

35.    Defendants Cook County, the Sheriff's Department, and Sheriff Sheahan are responsible for the acts of Sheriff Department supervisors, who were acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of race discrimination, harassment, retaliation, and violating individual rights of equal protection and free speech under the First and Fourteenth Amendments to the Constitution of the United States.

36.    All Defendants have acted under color of state law at all material times hereto.

37.    Defendants engaged in a continuing violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

## DEFENDANTS' CONDUCT TOWARDS PLAINTIFFS

### A.    PLAINTIFF CHERYL PATTERSON

38.    Plaintiff Cheryl Patterson incorporates and realleges paragraphs 1 through 171 herein.

39.    Plaintiff Patterson has been employed by the Sheriff's Department and through Cook County since 1981 as an investigator. In 1994, she was promoted to an Investigator II.

40.    At all relevant times, Patterson was assigned to the Department of Community Supervision and Intervention ("DCSI") in the Electronic Monitoring Unit ("EMU").

41.    In early 1999, the Permissions office maintained office hours of Monday through Friday, from 8:00 am to 4:00 pm. Plaintiff had Saturday, Sunday and Holidays off. The Work/School office maintained similar hours. This schedule is referred to as a 5/2 schedule. Plaintiff was required to bid for these positions based on seniority and other factors because they had fixed hours and days.

42.     In March, 1999 a controversy arose in the Permissions office regarding the hours of work required of the investigators. On March 19, 1999 Deputy Chief Campillo held an unannounced meeting to address the problem. Attending the meeting were Irene Alva, the unit supervisor, Investigator Isley, Plaintiffs Patterson and Scaife, and Investigator Schaefer.

43.     Deputy Chief Campillo announced his decision regarding the controversy. Plaintiff, along with Scaife, and other Plaintiffs, responded that they would grieve the decision pursuant to the Collective Bargaining Agreement (CBA) between the County of Cook and MAP. Campillo stated to Plaintiff Patterson, Scaife, and other Plaintiffs that they knew what would happen if they filed a grievance with the Union and that they could be transferred out of the office. He also indicated that "don't say you weren't warned."

44.     The normal practice and procedure of the Sheriff's Department permitted supervising personnel to leave work early and the imposition of Campillo's decision constituted an unfair labor practice.

45.     Plaintiff Patterson grieved the unfair labor practice under No. 99-003 on behalf of employees in both the Permissions and Work/School offices, including Plaintiff Schaefer, on March 22, 1999.

46.     On March 24, 1999 Patterson filed Grievance 99-004 alleging that the transfers were retaliatory and on March 25, 1999 filed Grievance 99-005 adding that the transfers violated specific rights under the contract. On March 26, 1999 Patterson filed Grievance 99-006 alleging that the officers had been threatened if they complained and listing the various persons who left work early without punishment.

47.     During the next several days in late March, 1999, Plaintiff Patterson and Scaife began finding harassing notes and items at their workstations. Both found nearly identical notes saying, "bye bye inv. Patterson" and "you're next, inv. Scaife," pictures of a lynching were also left on their desks. Both Scaife and Patterson brought the matter to the attention of Internal Affairs.

48.     Internal Affairs immediately refused to investigate the matter. Pietrowski informed Patterson and Scaife that he would investigate the problem and that they should prepare memos describing the incident and not contact Internal Affairs again. Pietrowski stated that any contact with Internal Affairs constituted going outside of the prescribed chain of command. He

then ordered Scaife and Patterson to alter the memos submitted for Internal Affairs and redirect them to his office contrary to Departmental policy.

49.     Pietrowski's denial of access to the Sheriff's internal grievance and investigation mechanisms denied Patterson and Scaife a privilege or practice accorded all other employees.

50.     Pietrowski thus became responsible for the conduct of an investigation into the harassment of Scaife and Patterson. He, in turn, performed no credible investigation into the allegations and the complaints of Scaife and Patterson were summarily dismissed.

51.     Later, Pietrowski supplied a written report of his "investigation" which falsely represented the extent of his investigation and the statements supplied to him by both Scaife and Patterson.

52.     After the issuance of the final investigative report, Scaife and Patterson, both African American, were subjected to a variety of discipline, including written warnings and suspensions.

53.     In mid-May, 1999, a fourth step grievance meeting was held. After the meeting the union representative persuaded Patterson to withdraw her grievance, which she did. On May 28, 1999, four days after the withdrawal, Patterson and Scaife were involuntarily reassigned to patrol on a 6 days on, 2 days off schedule (hereinafter referred to as a 6/2 schedule), which effectively closed the Permissions office.

54.     After waiting some period of time to be reinstated, EMU refused to comply. On November 16, 1999 the Sheriff announced, for the first time, that all Permissions and Work/School officers would be redeployed on November 21, 1999.

55.     On December 2, 1999, Plaintiff Antone filed Grievance 99-027 relating to the November redeployment. On December 6, 1999, Ricci rescinded the agreement to transfer James and Littleton and stated that "he blamed Scaife and that bitch Patterson" for having caused the redeployment.

56.     Ultimately, Defendants reassigned each and every deputy who was present at the March, 1999 meeting who complained or grieved unfair treatment.

57.     There was no valid or credible business reason for the redeployment or transfer of the Plaintiffs by the Defendant.

58. On November 30, 1999 and thereafter Plaintiff Patterson and Plaintiffs Scaife, and Antone timely filed charges with the Illinois Labor Relations Board as consolidated under Case Nos. L-CA-00-050, 051 and 083.

59. Patterson was disciplined by the Employer based on her race and gender in the following respects:

      a. She was denied promotions

      b. She was investigated and scrutinized more closely than other employees

      c. She was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

      d. She was denied transfers when requested when other similarly situated investigators were permitted transfer.

      e. She was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

      f. She was required to work more hours than other similarly situated investigators without receiving overtime compensation.

      g. She has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of her daily work and movements for the sole purpose of terminating her.

60. Defendants' conduct against Patterson constitutes unlawful discrimination based on race and gender and is part of a continuing pattern and practice of discrimination against Blacks based on race and females based on gender.

61. Defendants' conduct against Patterson also constitutes unlawful retaliation because she complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

## B. PLAINTIFF ROSA PRICE

62. Plaintiff Rosa Price incorporates and realleges paragraphs 1 through 171 herein.

63.     Plaintiff Price has been employed by the Sheriff's Department and through Cook County since 1980. She held the position as an Investigator II.

64.     Price is assigned to DCSI in EMU.

65.     On or about March 8, 2000 Price was diagnosed with coronary heart disease. She was placed on disability from that approximate date until September 25, 2000.

66.     Upon her return to work her physician, Dr. William Coleman, advised the Defendants that Price was substantially limited in a major life activity and could not tolerate prolonged standing, lifting, stair climbing and over-exertion.

67.     The Defendant was also advised that Price should be placed on a five day a week schedule in order to accommodate her condition and recovery.

68.     The nature and severity of the Plaintiff's impairment is such that she is substantially limited in one or more major life activities, but is able to perform the essential functions of the position she holds.

69.     Price has requested that a reasonable accommodation be made by the Defendant County on numerous occasions; to wit, she has requested that she be placed in her former position and schedule working a 5/2 schedule as advised by her physician.

70.     The accommodation of Price would not have placed any undue hardship on the Defendant County since it has similarly accommodated other employees with similar or no disabilities.

71.     Price was disciplined by the Employer based on her race, gender and requests for reasonable accommodation in the following respects:

a.   She was denied promotions

b.   She was investigated and scrutinized more closely than other employees

c.   She was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

d.   She was denied transfers when requested when other similarly situated investigators were permitted transfer.

e.   She was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

     f. She was required to work more hours than other similarly situated investigators without receiving overtime compensation.

     g. She has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of her daily work and movements for the sole purpose of terminating her.

72. Defendants' conduct against Price constitutes unlawful discrimination based on race, gender, and disability and is part of a continuing pattern and practice of discrimination against Blacks based on race, females based on gender, and disabled employees.

73. Defendants' conduct against Price also constitutes unlawful retaliation because she complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

### C.    PLAINTIFF SAMUEL SCAIFE

74. Plaintiff Samuel Scaife incorporates and realleges paragraphs 1 through 171 herein.

75. Plaintiff Scaife has been employed by the Sheriff's Department and through Cook County since 1988 as an Investigator.

76. Scaife is assigned to DCSI in EMU.

77. In early 1999, the Permissions office maintained office hours of Monday through Friday, from 8:00 am to 4:00 pm. Plaintiff had Saturday, Sunday and Holidays off. The Work/School office maintained similar hours. This schedule is referred to as a 5/2 schedule. Plaintiff was required to bid for these positions based on seniority and other factors because they had fixed hours and days.

78. In March 1999, a controversy arose in the Permissions office regarding the hours of work required of the investigators. On March 19, 1999 Deputy Chief Campillo held an unannounced meeting to address the problem. Attending the meeting were Irene Alva, the unit supervisor, Investigator Isley, and Plaintiffs Patterson, Scaife and Schaefer.

79. Deputy Chief Campillo announced his decision regarding the controversy. Plaintiff, along with Scaife, and other Plaintiffs named herein, responded that they would grieve the decision pursuant to the Collective Bargaining Agreement (CBA) between the County of

Cook and MAP. Campillo stated to Plaintiff Patterson, Scaife, and other Plaintiffs that they knew what would happen if they filed a grievance with the Union and that they could be transferred out of the office. He also indicated that "don't say you weren't warned."

80. The normal practice and procedure of the Sheriff's Department permitted supervising personnel to leave work early and the imposition of Campillo's decision constituted an unfair labor practice.

81. On March 24, 1999 Patterson filed Grievance 99-004 alleging that the transfers were retaliatory and on March 25, 1999 filed Grievance 99-005 adding that the transfers violated specific rights under the contract. On March 26, 1999 Patterson filed Grievance 99-006 alleging that the officers had been threatened if they complained and listing the various persons who left work early without punishment.

82. During the next several days in late March 1999, Plaintiff Scaife and Patterson began finding harassing notes and items at their workstations. Both found nearly identical notes saying, "bye bye inv. Patterson" and "you're next, inv. Scaife," pictures of a lynching were also left on their desks. Both Scaife and Patterson brought the matter to the attention of Internal Affairs.

83. Internal Affairs immediately refused to investigate the matter. Pietrowski informed Patterson and Scaife that he would investigate the problem and that they should prepare memos describing the incident and not contact Internal Affairs again. Pietrowski stated that any contact with Internal Affairs constituted going outside of the prescribed chain of command. He then ordered Scaife and Patterson to alter the memos submitted for Internal Affairs and redirect them to his office contrary to Departmental policy.

84. Pietrowski's denial of access to the Sheriff's internal grievance and investigation mechanisms denied Patterson and Scaife a privilege or practice accorded all other employees.

85. Pietrowski thus became responsible for the conduct of an investigation into the harassment of Scaife and Patterson. He, in turn, performed no credible investigation into the allegations and the complaints of Scaife and Patterson were summarily dismissed.

86. Upon information and belief, Defendants Pietrowski, Shields, Campillo and others devised a scheme with officers assigned to the Internal Affairs Division such that the Defendants would be advised of any complaints and reports filed by the Plaintiffs with IAD.

87. Later, Pietrowski supplied a written report of his "investigation" which falsely represented the extent of his investigation and the statements supplied to him by both Scaife and Patterson.

88. After the issuance of the final investigative report, Scaife and Patterson, both African American, were subjected to a variety of discipline, including written warnings and suspensions.

89. In mid-May, 1999 a fourth step grievance meeting was held. After the meeting the union representative persuaded Patterson to withdraw her grievance, which she did. On May 28, 1999, four days after the withdrawal, Patterson and Scaife were involuntarily reassigned to patrol on a 6 days on, 2 days off schedule (hereinafter referred to as a 6/2 schedule), which effectively closed the Permissions office.

90. The assignment to a 6/2 schedule was considered punishment and discipline because the Defendants knew and intended that the Plaintiffs would not be compensated for overtime hours worked during the pay period.

91. On June 12, 1999, Scaife submitted Grievance 99-012 alleging that his transfer constituted harassment and was racially motivated. The Sheriff granted Scaife's grievance thereby admitting the harassment and discrimination.

92. After waiting some period of time to be reinstated, EMU refused to comply. On November 16, 1999 the Sheriff announced, for the first time, that all Permissions and Work/School officers would be redeployed on November 21, 1999.

93. On November 23, 1999 Plaintiffs James and Littleton complained about the reassignments in Permissions and Work/School and requested Deputy Director Ricci to reassign them. Ricci stated that he would reassign both James and Littleton if they agreed not to tell anyone about it.

94. On December 2, 1999, Plaintiff Antone filed Grievance 99-027 relating to the November redeployment. On December 6, 1999 Ricci rescinded the agreement to transfer James and Littleton and stated that "he blamed Scaife and that bitch Patterson" for having caused the redeployment.

95. Ultimately, Defendants reassigned each and every deputy who was present at the March 1999 meeting who complained or grieved unfair treatment.

96.    There was no valid or credible business reason for the redeployment or transfer of the Plaintiffs by Defendants.

97.    On November 30, 1999 and thereafter Plaintiff Scaife and Plaintiffs Patterson and Antone timely filed charges with the Illinois Labor Relations Board as consolidated under Case Nos. L-CA-00-050, 051 and 083.

98.    Scaife was disciplined by the Employer based on his race and in retaliation for filing complaints of discriminatory treatment in the following respects:

a.    He was denied promotions

b.    He was investigated and scrutinized more closely than other employees

c.    He was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

d.    He was denied transfers when requested when other similarly situated investigators were permitted transfer.

e.    He was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

f.    He was required to work more hours than other similarly situated investigators without receiving overtime compensation.

g.    He has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of his daily work and movements for the sole purpose of terminating him.

99.    Defendants' conduct against Scaife constitutes unlawful discrimination based on race and is part of a continuing pattern and practice of discrimination against Blacks based on race.

100.    Defendants' conduct against Scaife also constitutes unlawful retaliation because he complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

101.    Defendants' conduct against Scaife constitutes unlawful discrimination based on race and is part of a continuing pattern and practice of discrimination against Blacks based on race.

102.    Defendants' conduct against Scaife also constitutes unlawful retaliation because he complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

### D.    PLAINTIFF BENARD LITTLETON

103.    Plaintiff Benard Littleton incorporates and realleges paragraphs 1 through 171 herein.

104.    Plaintiff Littleton has been employed by the Sheriff's Department and through Cook County as an investigator.

105.    He is assigned to DCSI in the patrol division.

106.    Littleton was disciplined by the Employer based on his race and in retaliation for filing complaints of discriminatory treatment in the following respects:

  a.  He was denied promotions

  b.  He was investigated and scrutinized more closely than other employees

  c.  He was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

  d.  He was denied transfers when requested when other similarly situated investigators were permitted transfer.

  e.  He was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

  f.  He was required to work more hours than other similarly situated investigators without receiving overtime compensation.

  g.  He has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of his daily work and movements for the sole purpose of terminating him.

107.    On November 23, 1999 Plaintiffs James and Littleton complained about the reassignments in Permissions and Work/School and requested Deputy Director Ricci to reassign them. Ricci stated that he would reassign both James and Littleton if they agreed not to tell anyone about it.

108.    On December 6, 1999, Ricci rescinded the agreement to transfer James and Littleton and stated that "he blamed Scaife and that bitch Patterson" for having caused the redeployment.

109.    Ultimately, Defendants reassigned each and every deputy who was present at the March, 1999 meeting who complained or grieved unfair treatment.

110.    There was no valid or credible business reason for the redeployment or transfer of the Plaintiffs by the Defendant.

111.    Defendants' conduct against Littleton constitutes unlawful discrimination based on race and is part of a continuing pattern and practice of discrimination against Blacks based on race.

112.    Defendants' conduct against Littleton also constitutes unlawful retaliation because he complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

### E.    PLAINTIFF JEFFERY ANTONE

113.    Plaintiff Jeffery Antone incorporates and realleges paragraphs 1 through 171 herein.

114.    Plaintiff Antone has been employed by the Sheriff's Department and through Cook County since as an investigator.

115.    Antone is assigned to DCSI in EMU.

116.    On December 2, 1999, Plaintiff Antone filed Grievance 99-027 relating to the November redeployment.

117.    After filing a grievance with the Illinois Labor Relations Board, he was retaliated against in the following respects:

a.    He was denied promotions

b. He was investigated and scrutinized more closely than other employees

c. He was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

d. He was denied transfers when requested when other similarly situated investigators were permitted transfer.

e. He was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

f. He was required to work more hours than other similarly situated investigators without receiving overtime compensation.

g. He has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of his daily work and movements for the sole purpose of terminating him.

118. Ultimately, Defendants reassigned each and every deputy who was present at the March, 1999 meeting who complained or grieved unfair treatment.

119. There was no valid or credible business reason for the redeployment or transfer of the Plaintiffs by the Defendant.

120. Defendants' conduct against Antone also constitutes unlawful retaliation because he complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

### F.    PLAINTIFF DARLENE JAMES

121. Plaintiff Darlene James incorporates and realleges paragraphs 1 through 171 herein.

122. Plaintiff James has been employed by the Sheriff's Department and through Cook County since 1984 as an investigator.

123. James is assigned to DCSI in EMU.

124.    Price was disciplined by the Employer based on her race, gender and requests for reasonable accommodation in the following respects:

      a.    She was denied promotions

      b.    She was investigated and scrutinized more closely than other employees

      c.    She was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

      d.    She was denied transfers when requested when other similarly situated investigators were permitted transfer.

      e.    She was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

      f.    She was required to work more hours than other similarly situated investigators without receiving overtime compensation.

      g.    She has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of her daily work and movements for the sole purpose of terminating her.

      h.    She was constructively discharged and denied her position and wages in retaliation for her complaints and charges of discrimination.

125.    On November 23, 1999, Plaintiffs James and Littleton complained about the reassignments in Permissions and Work/School and requested Deputy Director Ricci to reassign them. Ricci stated that he would reassign both James and Littleton if they agreed not to tell anyone about it.

126.    On December 6, 1999, Ricci rescinded the agreement to transfer James and Littleton and stated that "he blamed Scaife and that bitch Patterson" for having caused the redeployment.

127.    Ultimately, Defendants reassigned each and every deputy who was present at the March, 1999 meeting who complained or grieved unfair treatment.

128.    There was no valid or credible business reason for the redeployment or transfer of the Plaintiffs by the Defendant.

129.    Defendants' conduct against James constitutes unlawful discrimination based on gender and is part of a continuing pattern and practice of discrimination against females based on gender.

130.    Defendants' conduct against James also constitutes unlawful retaliation because she complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

### G.    PLAINTIFF DEBRA HIGENS

131.    Plaintiff Debra Higens incorporates and realleges paragraphs 1 through 171 herein.

132.    Plaintiff Higens was employed by the Sheriff's Department through Cook County from approximately June of 1985 to August of 2000.

133.    During all relevant times, Plaintiff Higens was a sworn correctional officer and was assigned to DCSI in EMU.

134.    On a continuing and ongoing basis, Plaintiff Higens has been subjected to discrimination in the terms and conditions of her employment based on her familial associations with African Americans in that she was married to an African American and has a child from that marriage, including being subject to unwarranted and increased scrutiny and criticism, discriminatory treatment based on these associations, a hostile work environment, and retaliation for complaining about unlawful discriminatory treatment.

135.    Other employees often referred to Higens in racially derogatory terms, including making such statements as she "likes black d_ck."

136.    Supervisors, including Defendants Campillo and Shields, coerced other employees to make false reports against Higens in retaliation for her complaints and in discrimination based on her association with African Americans.

137.    In or about August or September of 1999, Defendant Campillo stated to Defendant Shields about Higen's complaints, "Well you know that bitch is trying to get me in trouble."

138.    Higens complained about continuing harassment and discrimination based on her associations with African Americans regarding her treatment over the course of her employment and has suffered retaliation as a result thereof with respect to the terms and conditions of her employment.

139.    In or about August of 2000, Plaintiff Higens was constructively discharged when Defendants refused to accommodate her with a leave of absence and failed to remedy the hostile work environment, discrimination, and retaliation.

140.    The harassment and retaliation has continued into the present, including Defendants intimidation of witnesses who witnessed the harassment, discrimination, and hostile work environment against Higens, including suspending David Walker for 29 days because he was identified as a witness on her behalf and telling him that they were going to put his suspension on hold until they found out the results of Higens' case, and taking Larry Parker off the street and demoting him in terms of his job duties and stating to him: "You better watch yourself."

141.    In or about April 2002, Defendant Shields told Walker, "You know about Deb Higens. When I get through with this, she's going to fry. I am going to get her for defamation of character."

142.    Defendants' conduct against Higens constitutes unlawful discrimination against those who associate with Blacks and based on gender and is part of a continuing pattern and practice of discrimination against Blacks based on race, those who associate with Blacks, and females based on gender.

143.    Defendants' conduct against Higens also constitutes unlawful retaliation because she complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

## H.    PLAINTIFF LARRY PARKER

144.    Plaintiff Larry Parker incorporates and realleges paragraphs 1 through 171 herein.

145.    Plaintiff Parker has been employed by the Sheriff's Department and through Cook County since 1988 as a sworn correctional officer.

146.    Parker is currently assigned to DCSI in EMU and has been 1995.

147.    In 1996, Parker and Higens were assigned as partners to recover missing electronic monitoring equipment.

148.    Plaintiff Parker was subjected to ongoing and continuous harassment and hostility because of his race and because he supported Plaintiff Higens in her complaints of sexual harassment and attempts to remedy the hostile work environment: including but not limited to being ordered to file false charges against Plaintiff Higens and accuse her of wrongdoing she did not do; refusing to investigate his complaints of harassment and retaliation; subjecting him to unwarranted and disproportionate disciplinary action; stripped of his duties and put in a job less rewarding and unfulfilling, denying him promotions.

149.    In or about November of 1999, Plaintiff Parker was forced to take medical leave because of the work related stress from the harassment, discrimination, and retaliatory treatment by Defendants.  While on leave, he was forced to call in and report every morning.  Other non-Black officers and officers who did not complain were not required to call in every day.

150.    In or about September of 2001, Defendants forced Parker to re-qualify despite the fact that he had qualified three (3) times within the prior 12 month period.

151.    In or about late 2001, after Higens confirmed that her witnesses were Parker and Walker, Petrowski told Parker that he saw him at a political function.  Petrowski told him to "stay away."  Petrowski told him this was coming from "upstairs."  These allegations were false.  Defendants took Parker off the street and stripped him of his normal duties, claiming they were based on these allegations.

152.    In or about February 2002, Defendant Wallace called Parker into a meeting with the State's Attorney in which the State's Attorney asked Parker about Plaintiff Higens complaint of sexual harassment.

153.    Subsequent to this meeting, Defendant Wallace again called Plaintiff Parker into the office for an interview with an investigator from the Illinois Cook County Commission on Human Rights.  Parker felt uncomfortable by this meeting and intimidated by Wallace's presence.

154.    Defendants have denied Plaintiff Parker promotions on a consistent and ongoing basis because of his race, in retaliation for his complaints, and in retaliation for his support and honesty about Higens' complaints of sexual harassment.

155.    Defendants' conduct against Parker constitutes unlawful discrimination based on race and is part of a continuing pattern and practice of discrimination against Blacks based on race.

156.    Defendants' conduct against Parker also constitutes unlawful retaliation because he complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

## I.    PLAINTIFF DAVID WALKER

157.    Plaintiff David Walker incorporates and realleges paragraphs 1 through 171 herein.

158.    Plaintiff Walker has been employed by the Sheriff's Department and through Cook County since 1991 as a sworn correctional officer.

159.    Walker is assigned to DCSI in EMU.

160.    Walker heard white male officers refer to Plaintiff Higens, "you know she likes Niggers." This occurred on a continuing and ongoing basis from 1992 through 2002, even after Plaintiff Higens left Defendants' employ.

161.    In or about February 2002, Plaintiff Walker was told, "you're a black guy and you don't have any clout. You'll never make it any higher," and "you'll never be my boss."

162.    When other officers found out that Walker was working out with Plaintiff Higens, male officers made derogatory comments about her, such as, "Are you sticking her?" "Come on, you know she likes black guys?"

163.    Plaintiff Walker was subjected to ongoing and continuous harassment and hostility because of his race and because he supported Plaintiff Higens in her complaints of sexual harassment and attempts to remedy the hostile work environment: including but not limited to subjecting him to unwarranted and disproportionate disciplinary action; bringing false charges against him; refusing to investigate his complaints of harassment and retaliation; subjecting him to dangerous and unsafe work conditions; denying him promotions; and referring to him as a "nigger."

164.    On the heals of Plaintiff Higens naming Walker and Parker as witnesses in her complaint before the Cook County Commission on Human Rights, Walker was threatened with a 29-day suspension. Defendants stated reason for the 29-day suspension was pretext for

discrimination, retaliation, and his willingness to tell the truth about the sexual harassment Higens suffered.

165.    Walker grieved this disciplinary action through the Union.

166.    In or about February of 2002, Defendant Wallace called Walker into his office and to meet with him and a State's Attorney regarding Higens' complaints. Defendant Wallace told Walker that he was going to hold off on the 29-day suspension until after the 5th step grievance. Walker was told, "You play ball and you won't get any time – F_ck Higens." Walker was also told that Defendants wanted him to testify for the Sheriff's office. An attorney from the State's Attorney's office was present in this meeting over the telephone-speaker system. Plaintiff Walker felt intimidated during this meeting. Walker confirmed that Higens was subject to sexual and racial harassment.

167.    Subsequent to this meeting, Defendant Wallace again called Plaintiff Walker into the office for an interview with an investigator from the Illinois Cook County Commission on Human Rights. Walker felt uncomfortable by this meeting and intimidated by Wallace's presence.

168.    Following this meeting, Defendant Wallace ordered that Walker serve the 29-day suspension before the completion of the 5th step grievance.

169.    Other employees told Walker that Defendants "were out to get him because he testified on behalf of Higens."

170.    Defendants' conduct against Walker constitutes unlawful discrimination based on race and is part of a continuing pattern and practice of discrimination against Blacks based on race.

171.    Defendants' conduct against Walker also constitutes unlawful retaliation because he complained about Defendants' unlawful conduct and is part of a continuing pattern and practice of retaliation against employees who complain about Defendants' discriminatory, retaliatory, and other unlawful practices.

## COUNT I

### (SECTION 1981 RACE DISCRIMINATION
### V. ALL DEFENDANTS)

172.    Plaintiffs Patterson, Price, Scaife, Littleton, Higens, Parker, and Walker incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

173.    The conduct of Defendants violates 42 U.S.C. § 1981 in that Defendants purposefully and unlawfully prevented Plaintiffs, who are Black citizens and with respect to Plaintiff Higens was married to a Black citizen, from enjoying the same rights to make and enforce contracts as enjoyed by white citizens and those not associated with Blacks.

174.    Defendants discriminated against Plaintiffs by denying them promotions, transfers, assignments based on their race; subjecting them to disproportionate disciplinary action and terms and conditions of their employment; referring to Blacks as "nigger" and other racially derogatory terms; assigning them heavier work loads and denying them training; and creating and perpetuating a hostile work environment based on their race and association with African Americans; and refusing to remedy complaints of discrimination based on race in the work place.

175.    In addition, Plaintiffs were deterred and prevented from applying for transfers and promotions due to Defendants' discriminatory practices.

176.    Defendants Devane, Wallace, Pietrowski, Campillo, Ricci, Shields either participated in the discriminatory treatment, knew or should have known of the discriminatory conduct, failed to take any effective remedial action to remedy and/or prevent the discriminatory treatment, and turned a blind eye to the discriminatory treatment against Plaintiff and other African American employees and who associated with African Americans.

177.    Defendants' conduct constitutes a continuing violation and a pattern and practice of discrimination against Plaintiffs based on their race and familial association with Blacks.

178.    The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

179.    The defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, thereby entitling Plaintiffs to punitive damages against the individual Defendants.

180.    Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B.   Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C.   Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D.   A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

E.   A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1981, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment of African American employees and employees who associate with African Americans;

F.   A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1981;

G.   The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H.   Punitive damages as allowed by law as against all individual Defendants;

I.   An award of reasonable attorneys' fees, costs, and litigation expenses; and

J.   Such other relief as the Court may deem just or equitable.

## COUNT II

### (§1983 EQUAL PROTECTION CLAIMS BASED ON RACE

### v. ALL DEFENDANTS)

181.   Plaintiffs Patterson, Price, Scaife, Littleton, Higens, Parker, and Walker incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

182.   Defendants discriminated against Plaintiffs by denying them promotions, transfers, assignments based on their race; subjecting them to disproportionate disciplinary action and terms and conditions of their employment; referring to Blacks as "nigger" and other racially derogatory terms; assigning them heavier work loads and denying them training; and creating and perpetuating a hostile work environment based on their race and association with African Americans; and refusing to remedy complaints of discrimination based on race in the work place.

183.    In addition, Plaintiffs were deterred and prevented from applying for transfers and promotions due to Defendants' discriminatory practices.

184.    Defendants Devane, Wallace, Pietrowski, Campillo, Ricci, Shields either participated in the discriminatory treatment, knew or should have known of the discriminatory conduct, failed to take any effective remedial action to remedy and/or prevent the discriminatory treatment, and turned a blind eye to the discriminatory treatment against Plaintiff and other African American employees and who associated with African Americans.

185.    Defendants' conduct constitutes a continuing violation.

186.    Defendants' actions reflect a policy, custom, or pattern of official conduct of engaging in and condoning harassment and discrimination of African American employees based on their race and association with African Americans.

187.    The actions of Defendants against Plaintiffs violate their equal protection rights to be free from racial harassment and discrimination under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

188.    The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

189.    The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

190.    The defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, thereby entitling Plaintiffs to punitive damages against the individual Defendants.

191.    Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C. Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment based on race and with African Americans;

F. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

G. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H. Punitive damages as allowed by law as against all individual Defendants;

I. An award of reasonable attorneys' fees, costs, and litigation expenses; and

J. Such other relief as the Court may deem just or equitable.

## COUNT III

### (TITLE VII RACE DISCRIMINATION

### v. COOK COUNTY AND SHERIFF SHEAHAN OFFICIALLY)

192. Plaintiffs Patterson, Price, and Scaife incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

193. The aforementioned conduct of Defendants was racially motivated and constitutes discrimination against Plaintiffs in violation of Title VII of the Civil Rights Act, as amended.

194. More than thirty days prior to the institution of this lawsuit, Plaintiffs Patterson, Price, and Scaife filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII by Cook County through the Cook County Sheriff's Department. Less than 90 days prior to the institution of this action, Plaintiffs Patterson, Price, and Scaife received a Right to Sue Letters. All conditions precedent to the institution of this lawsuit have been fulfilled.

195. The aforementioned discrimination in the terms and conditions of plaintiff's employment was motivated by Plaintiff's race and constitutes unlawful discrimination on the

basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended. The conduct of Defendants occurring subsequent to Plaintiff's complaints of race discrimination also constitutes retaliation in violation of Sect. 2000e-3 of Title VII of the Civil Rights Act of 1964, as amended.

196. Defendants discriminated against Plaintiffs by denying them promotions, transfers, assignments based on their race; subjecting them to disproportionate disciplinary action and terms and conditions of their employment; referring to Blacks as "nigger" and other racially derogatory terms; assigning them heavier work loads and denying them training; and creating and perpetuating a hostile work environment based on their race and association with African Americans; and refusing to remedy complaints of discrimination based on race in the work place.

197. In addition, Plaintiffs were deterred and prevented from applying for transfers and promotions due to Defendants' discriminatory practices.

198. Defendants' conduct constitutes a continuing violation and a pattern and practice of discrimination against Plaintiffs based on their race and familial association with Blacks.

199. The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

200. Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B.  Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C.  Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D.  A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

E.     A permanent injunction requiring the Defendants adopt employment practices and
       policies in accord and conformity with the requirements of Title VII, 42 U.S.C. §
       2000e et seq.;

F.     The Court retain jurisdiction of this case until such time as it is assured that
       Defendants have remedied the policies and practices complained of herein and are
       determined to be in full compliance with the law;

G.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

## COUNT IV

### (§1983 EQUAL PROTECTION CLAIMS BASED ON GENDER
### V. ALL DEFENDANTS)

201.   Plaintiffs Patterson, Price, James, and Higens incorporate and reallege paragraphs
1 through171 as if fully set forth herein.

202.   On a continuing and ongoing basis, Plaintiffs have been subjected to
discrimination in the terms and conditions of her employment based on her gender, including but
not limited to being subject to unwarranted and increased scrutiny and criticism; given
unwarranted and disproportionate disciplinary action; denied promotions, transfers, and
assignments; being referred to as "bitches," "c_nts," and other derogatory terms based on gender;
and being subject to discriminatory treatment, a hostile work environment, and retaliation for
complaining about unlawful conduct.

203.   Defendants Devane, Wallace, Pietrowski, Campillo, Ricci, Shields either
participated in the discriminatory treatment, knew or should have known of the discriminatory
conduct, failed to take any effective remedial action to remedy and/or prevent the discriminatory
treatment, and turned a blind eye to the discriminatory treatment against Plaintiff and other
female employees.

204.   Defendants' actions reflect a policy, custom, or pattern of official conduct of
engaging in and condoning sexual harassment and discrimination of women based on their
gender.

205.   The actions of Defendants against Plaintiffs violate their equal protection right to
be free from sexual harassment and gender discrimination under the Fourteenth Amendment of
the United States Constitution and 42 U.S.C. § 1983.

206.    The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

207.    The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

208.    Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for her humiliation, anguish, emotional distress, and defamation, caused by Defendants' conduct;

C.    Defendants be required to pay prejudgment interest to Plaintiff on these damages;

D.    A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

E.    A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment of female employees;

F.    A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

G.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H.    Punitive damages as allowed by law as against all individual Defendants;

I.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

J.    Such other relief as the Court may deem just or equitable.

## COUNT V

### (TITLE VII GENDER DISCRIMINATION AND SEXUAL HARASSMENT
### v. COOK COUNTY AND SHERIFF SHEAHAN OFFICIALLY)

209.    Plaintiffs Patterson, Price, and James incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

210.    The aforementioned conduct of Defendants was constitutes discrimination against Plaintiffs based on their gender (female) in violation of Title VII of the Civil Rights Act, as amended.

211.    On a continuing and ongoing basis, Plaintiffs have been subjected to discrimination in the terms and conditions of her employment based on her gender, including but not limited to being subject to unwarranted and increased scrutiny and criticism; given unwarranted and disproportionate disciplinary action; denied promotions, transfers, and assignments; being referred to as "bitches," "c_nts," and other derogatory terms based on gender; and being subject to discriminatory treatment, a hostile work environment, and retaliation for complaining about unlawful conduct.

212.    Defendants' actions reflect a pattern and practice of official conduct of engaging in and condoning sexual harassment and discrimination of women based on their gender.

213.    The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

214.    Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for her humiliation, anguish, emotional distress, and defamation, caused by Defendants' conduct;

C.    Defendants be required to pay prejudgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

E.      A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

F.      The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.      Such other relief as the Court may deem just or equitable.

## COUNT VI

### (§ 1983 FIRST AMENDMENT
### V. ALL DEFENDANTS)

215.    Plaintiffs Patterson, Price, Scaife, Littleton, Antone, James, Hinges, Parker, and Walker incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

216.    Defendants intentionally retaliated against all Plaintiffs for complaining about Defendants unlawful conduct, which was a matter of public concern, including but not limited to as addressed above with respect to each Plaintiff, race and gender discrimination, harassment based on gender and race, filing unfair labor practice charges, filing EEOC charges, unfair labor practices, retaliation against employees who complained about unfair labor practices, violations of federal wage and hour laws, Defendants' pattern and practice of nepotism, and Defendants' pattern and practice of covering up complaints and conducting bad faith investigations which are devised to "make the Sheriff look good" verses providing effective remedial measures.

217.    Defendants Devane, Wallace, Pietrowski, Campillo, Ricci, Shields either participated in the retaliatory treatment, knew or should have known of the retaliatory conduct, failed to take any effective remedial action to remedy and/or prevent the retaliatory treatment, and turned a blind eye to the retaliation against Plaintiff and other employees who complained about unlawful conduct.

218.    Defendants' actions reflect a policy, custom, or pattern of official conduct of penalizing individual employees for exercising their right to free speech under the First and Fourteenth Amendments of the United States Constitution.

219. The actions of the Defendants against Plaintiffs violated their rights of free speech under the First Amendment to the United States Constitution as applicable to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

220. All of Plaintiff' statements addressed constitutionally protected matters of public concern.

221. The actions of Defendants in intentionally engaging in and condoning harassment and retaliation against Plaintiffs has caused them great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

222. The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiffs' rights as secured under 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, emotional distress caused by Defendants' conduct;

C. Defendants be required to pay prejudgment interest to Plaintiff on these damages;

D. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure protection of First Amendment rights secured under the United States Constitution;

F. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

G. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H. Punitive damages as allowed by law as against all individual Defendants;

I.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

J.  Such other relief as the Court may deem just or equitable.

## COUNT VII

### (TITLE VII CLAIMS BASED ON RETALIATION
### v. COOK COUNTY AND SHEAHAN OFFICIALLY)

223.  Plaintiffs Patterson, Price, Scaife, and James incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

224.  More than thirty days prior to the institution of this lawsuit, Plaintiffs Patterson, Price, and Scaife filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII by Cook County through the Cook County Sheriff's Department (Exhibit A). Less than 90 days prior to the institution of this action, Plaintiffs Patterson, Price, and Scaife received a Right to Sue Letters (Exhibit A). All conditions precedent to the institution of this lawsuit have been fulfilled.

225.  The aforementioned conduct constitutes retaliation in, including but not limited to, the terms and conditions of Plaintiffs' employment; disciplinary action; promotions, assignments, and transfers; training; and shifts. Defendants' retaliatory conduct was motivated by Plaintiffs' complaints against unlawful employment practices in violation of Sect. 2000e-3 of Title VII of the Civil Rights Act of 1964, as amended.

226.  Defendants' actions reflect a pattern and practice of official conduct of engaging in and condoning sexual harassment and discrimination of women based on their gender.

227.  The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

228.  Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B.  Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, emotional distress caused by Defendants' conduct;

C.  Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D.  A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

E.  A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

F.  The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.  Such other relief as the Court may deem just or equitable.

## COUNT VIII

### (TITLE VII ADA CLAIM

### V. COOK COUNTY AND SHEAHAN OFFICIALLY)

229.  Plaintiff Price incorporates and realleges paragraphs 1 through 171 as if fully set forth herein.

230.  The aforementioned conduct of Defendants was constitutes discrimination against Plaintiff based on her actual, perceived, and record of disability in violation of Title VII of the Civil Rights Act, as amended.

231.  More than thirty days prior to the institution of this lawsuit, Plaintiff Price filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII by Cook County through the Cook County Sheriff's Department. Less than 90 days prior to the institution of this action, Plaintiff received a Right to Sue Letters. All conditions precedent to the institution of this lawsuit have been fulfilled.

232.  Price was disciplined by the Employer based on his race and in retaliation for filing complaints of discriminatory treatment in the following respects

a.  She was denied promotions

b. She was investigated and scrutinized more closely than other employees

c. She was targeted for discipline and termination by her superiors, specifically Pietrowski, Ricci, Wallace, DeVane and Campillo.

d. She was denied transfers when requested when other similarly situated investigators were permitted transfer.

e. She was placed on a list of officers targeted for harassment and termination by the employer, along with other African American and female employees.

f. She was required to work more hours than other similarly situated investigators without receiving overtime compensation.

g. She has and continues to suffer retaliation from the Defendants in that the Defendants launched a covert scheme of surveillance and scrutiny of her daily work and movements for the sole purpose of terminating her.

233. The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

234. Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, emotional distress caused by Defendants' conduct;

C. Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D. A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

E.     A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

F.     The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

## COUNT IX

### (UNFAIR LABOR PRACTICES

### V. ALL DEFENDANTS)

235.     Plaintiffs Patterson, Antone, Price, Scaife, Littleton, and James incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

236.     Title 29, Section 158 of the United States Code prohibits the interference or restraint of employees in the exercise of their rights and to discharge or otherwise discriminate against an employee because he has filed charges or given testimony.

237.     Plaintiffs filed grievances with the Defendant County of Cook and testified in support of their various grievances.

238.     As a direct and proximate result of the exercise of their rights as granted under 29 U.S.C. §157 et seq., the Plaintiffs suffered discrimination, discipline and transfer, thus altering their terms and conditions of employment in violation of the CBA.

239.     Defendants acted knowingly and willfully in violating the well established rights of Plaintiffs and engaged in retaliatory conduct to punish Plaintiffs for filing lawful union grievances.

240.     The aforementioned conduct of Defendants has resulted in damages to Plaintiffs including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

241.     Plaintiffs request that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.        All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B.        Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, emotional distress caused by Defendants' conduct;

C.        Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D.        A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

E.        A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

F.        The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.        An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.        Such other relief as the Court may deem just or equitable.

## COUNT X

### (UNFAIR WAGE AND HOUR CLAIMS

### V. COOK COUNTY AND THE COOK COUNTY SHERIFF'S DEPARTMENT)

242.    Plaintiffs Patterson, Antone, Price, Scaife, Littleton, and James incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

243.    Defendants County of Cook and Sheriff of Cook County are required to compensate employees who work in excess of 40 hours per week.

244.    Title 27, Section 207 of the United States Code governs the compensation due employees subject to collective bargaining agreements.

245.    Defendants required its employees to work in excess of and statutory maximum of 2,240 hours in a 52 week period without compensation for overtime hours.

246.    Defendants were required to compensate the Plaintiffs, and those similarly situated, for any hours in excess of 171 in a 28 day period at a rate of 1.5 times regular pay.

247.    In March, 1999 the Defendant summarily altered the Plaintiffs work schedules and required the Plaintiffs to work up to 192 hours in a 28 day period without compensation, in violation of the Fair Labor Standards Act.

248.    The Defendants deployment actions were in direct retaliation for the Plaintiff's complaints regarding the Defendants actions.

249.    As a direct and proximate result of the Defendants redeployment action the Plaintiffs, and those similarly situated, were deprived of substantial amounts of compensation for their actual hours worked.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    All wages and benefits Plaintiffs would have received but for the discrimination, including pre-judgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiffs for the humiliation, anguish, emotional distress caused by Defendants' conduct;

C.    Defendants be required to pay prejudgment interest to Plaintiffs on these damages;

D.    A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

E.    A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

F.    The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.    Such other relief as the Court may deem just or equitable.

Respectfully submitted,

BY: _____

Attorneys for the Plaintiffs

LUKE A. CASSON
ARDC. # 6257881
Andreou and Casson, Ltd.
332 South Michigan Ave., Suite 1144
Chicago, Illinois 60604
Phone:  (312) 935-2000
Fax:     (312) 935-2001