# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01-C-9557 | DATE | June 13, 2003 |
| CASE TITLE | Patterson et al. v. Sheahan et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss (doc. # 41)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' Motion to Dismiss (doc. #41) is GRANTED in part and DENIED in part. Count IX is dismissed with prejudice. All paragraphs in Count XI related to punitive damages are stricken. As to all other counts, Defendants' Motion to Dismiss is DENIED. Defendants are ordered to answer the remaining portions of Plaintiffs' third amended complaint by 7/7/03. With regard to the pending motion to sever, Plaintiffs are to respond by 7/7/03. Defendants' reply is due 7/17/03. No extensions. Status hearing set for 7/30/03 at 9:15 a.m.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 3 number of notices | Document Number |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | JUN 17 2003 date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | 6-16-03 date mailed notice | |
| JHC | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHERYL PATTERSON, JEFFREY ANTONE, )
SAMUEL SCAIFE, BERNARD LITTLETON, )
DARLENE JAMES, ROSA PRICE, DEBRA )
HIGENS, LARRY PARKER, DAVID WALKER, )
FLOYD BEATTY, DENNIS MICNERSKI, )
SEAN ROBERTS, KEVIN WILLIAMS, )
and RUBEN HASSAN, )
)
Plaintiffs )
) No. 01-C-9557
v. )
) The Honorable William J. Hibbler
)
THE COUNTY OF COOK, MICHAEL J. )
SHEAHAN, in his official capacity as Sheriff )
of Cook County, Illinois, RANDY PIETROWSKI, )
in his individual and official capacities, )
HENRIQUE CAMPILLO, in his individual and )
official capacities, WILLIAM WALLACE, )
in his individual and official capacities, )
MICHAEL RICCI, in his individual and official )
capacities, DAVID DEVANE, GREG SHIELDS )
THOMAS DOURDY, WILLIAM PELLEGRINI, )
KENNETH TWOREK, JOSEPH LOGUE, )
EDWARD HEALY, ROBERT HELSON, )
JOSEPH RANZINO, JAMES MALINOWSKI, )
THOMAS FITZGERALD, and MATHEW )
MCNAMARA, )
)
Defendants. )

DOCKETED
JUN 17 2003

## MEMORANDUM OPINION AND ORDER

A group of fourteen Cook County, Illinois, Sheriff's Department employees sued Sheriff Michael Sheahan and other Sheriff's Department supervisors and employees, raising a host of claims related to discriminatory practices in the Department. According to the Plaintiffs, Defendants

1

discriminated against the Plaintiffs because of their race, gender, and disabilities in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Plaintiffs also raise equal protection claims based on race and gender, 42 U.S.C. § 1983. Next, Plaintiffs claim that the Defendants retaliated against them for opposing discrimination in violation of Title VII and retaliated against them for exercising their First Amendment rights in violation of 42 U.S.C. § 1983. Finally, Plaintiffs raise a trio of claims related to the Department's labor practices, alleging that the Department committed unfair labor practices, 29 U.S.C. § 157, violated the Fair Labor Standards Act (FLSA), 27 U.S.C. § 207, and violate the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2). Defendants move to dismiss portions of the Plaintiffs' complaint on a variety of grounds.

In deciding a Rule 12(b)(6) motion to dismiss or strike a pleading the Court assumes the truth of all well-pleaded allegations, making all inferences in the non-movant's favor. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 420 (7th Cir.1994). A court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). With this standard in mind, the Court turns to the various grounds under which Defendant moves to dismiss portions of Plaintiffs' claims.

1. The County of Cook as a Party Defendant

Defendants initially argue that the County of Cook is not a proper party defendant because the Plaintiffs did not allege that the Sheriff was instituting an official policy or custom of the County that resulted in the offense alleged. *See Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658 (1978). After Defendants filed their motion, the Seventh Circuit announced that "a county in

Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity," because the office of sheriff is funded by the county. *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003). Defendants admit that under *Carver* the County of Cook thus is a proper party defendant in this suit.

2. § 1981 & § 1983 Statute of Limitations

Defendants next argue that many of Plaintiffs' § 1981 and § 1983 claims should be dismissed because they are untimely. Claims arising under § 1981 and § 1983 are governed by the forum state's statute of limitations applied to personal injury actions, in this case two years. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). Plaintiffs respond that their §§ 1981 and 1983 claims allege an ongoing pattern and practice of racial discrimination and therefore events falling outside the two-year limitations period are saved by the continuing violations doctrine. According to Plaintiffs, because they have alleged a continuing pattern of prohibited conduct any and all acts occurring outside the proscribed limitations period are fair game. In their reply, Defendants argue that the continuing violations doctrine does not apply to §§ 1981 and 1983 actions because, unlike actions brought under Title VII, the statute of limitations in §§ 1981 and 1983 actions derives from state law.

Both parties' interpretations of the continuing violations doctrine are grossly inaccurate. The Seventh Circuit recently explained (to a subset of the Defendants no less) that the continuing violations doctrine is not a tolling doctrine (which thus would be subject to Illinois law governing the statute of limitations), but a doctrine governing accrual. *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001) (applying continuing violation doctrine to § 1983 cases); *see also Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th

3

Cir. 2001). Defendants' assertion that the continuing violation doctrine "does not encompass claims brought under § 1981 and § 1983" is patently wrong and their claim to the contrary is frivolous.

Plaintiffs' characterization of the doctrine is nearly as inaccurate as that of the Defendants. Plaintiffs argue, without citing any legal authority, that "[a] continuing violation means exactly that—the violation . . . has not stopped." But that is not at all what the continuing violations doctrine stands for. Merely because the violation is ongoing does not allow a plaintiff to reach back to breath life into otherwise untimely claims. Instead, a "violation is called 'continuing' . . . when it would it would be unreasonable to require or even permit [a plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard*, 253 F.3d at 319. In other words, the continuing violation doctrine applies when the unlawfulness of defendant's actions becomes apparent only after the cumulation of a series of related events; it does not apply to a series of related, but discrete, discriminatory acts. *Clark*, 318 F.3d at 767; *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708-09 (7th Cir. 2002). As the Supreme Court explained, each discrete, discriminatory act is a fresh wrong, and "discrete acts that fall within the statutory times period do not make timely acts that fall outside the time period." *National R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2071 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072.

Unfortunately, both parties have failed to muster accurate legal arguments necessary to support their respective positions. In so failing, both parties have left to the Court the task of sifting through Plaintiffs' 48-page, 328-paragraph, third amended complaint to determine whether the statute of limitations bars Plaintiffs' §§ 1981 and 1983 claims. But it is not the court's responsibility "to scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's*

4

*Supermarkets, Inc.*, 71 F.3d 637, 641 (7th Cir.1995). Defendants' motion to dismiss Plaintiffs' untimely §§ 1981 and 1983 claims is therefore DENIED.

A final note on this matter is in order. A cursory review of the Plaintiffs' complaint reveals that to a large degree Plaintiffs' allege a pattern of race- and gender- based discrimination comprised of a series of events that, taken cumulatively, rise to an actionable level, but individually may not. Thus, it appears, at least from the face of Plaintiffs' complaint, that their complaints are the very type of claims intended to be covered by the continuing violation doctrine and it cannot be said that there is no set of facts under which Plaintiffs could prove their complaints to be timely. At the same time, Plaintiffs' complaint also reveals that at least some of the Plaintiffs recognized the unlawfulness of Defendants' actions more than two years prior to the filing of the claim (for instance, on June 12, 1999, Plaintiff Samuel Scaife submitted a grievance alleging that his transfer was racially motivated, but did not file this claim until December 14, 2001). Although the Court denies Defendants' motion to dismiss, Defendants are free to argue during summary judgment or trial, when the factual record is more developed, that some Plaintiffs' claims are untimely and that the continuing violations doctrine does not save the untimely claims.

3. <u>Plaintiff Higens' Status as a Member of a Protected Class</u>

Defendants' next quarrel is that Plaintiff Debra Higens failed to allege that she was a member of a protected class and so her §§ 1981 and 1983 claims alleging discrimination based on race should be dismissed. Higens is Caucasian and alleges that the Defendants discriminated against her because she is a Caucasian who had been married to an African American male. According to Defendants, Higens thus failed to allege that she was a member of a protected class and instead alleged only discrimination based on "familial associations." Defendants' argument is without merit. Courts

employ the *McDonnell-Douglas* burden shifting method when analyzing §§ 1981 and 1983 claims of discrimination in the employment context, such as this. *See Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir.2000); *Dugan v. Ball State Univ.*, 815 F.2d 1132, 1135-6 (7th Cir.1987). Thus, Higens could establish a *prima facie* case either through the direct method or the indirect method (under which Higens would be required to establish she was a member of a protected class). But regardless of the method of proof under which Higens proceeds, the central question "is whether the employer would have taken the same action had the employee been of a different race . . . and everything else had remained the same." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996). Higens has sufficiently alleged that if she were *not Caucasian* that Defendants would not have discriminated against her—that is the essence of prohibited discrimination. Defendants' motion to dismiss Higens' §§ 1981 and 1983 race discrimination claims is DENIED.

4.  Plaintiff Williams' Right-to-Sue Letter

Next in Defendants' sights is Plaintiff Kevin Williams' failure to allege that he received a right-to-sue letter. Defendants are correct that Title VII requires a plaintiff to exhaust his administrative remedies before bringing suit. *Zipes v. Trans World Airlines*, 455 U.S. 385 (1982). But the Supreme Court has observed generally that procedural technicalities should not be used to bar a Title VII claim. *Zipes*, 455 U.S. at 397-98. The requirement that a plaintiff file EEOC charges before filing suit is not intended to erect elaborate pleading requirements or allow form to prevail over substance. *Cable v. Ivy Tech. State Coll.*, 200 F.3d 467, 477 (7th Cir. 1999); *Luckett v. Rent-A-Center, Inc.*, 53 F.3d 871, 873 (7th Cir. 1995); *see also Robinson v. Honeywell Microswitch Div.*, No. 98 C 50277, 2001 WL 13257, *5 (N.D. Ill. Jan. 3, 2001) (pleadings that plaintiff received a right-to-sue letter in other cases cured deficiencies in pending complaint); *Ichile v. City of Chicago*, No. 95 C

3507, 1996 WL 264708, *4 (N.D. Ill. May 16, 1996) (attaching right-to-sue letter to a complaint is not required to survive motion to dismiss). In response to Defendants' motion, Plaintiffs argue that Williams has indeed received a right-to-sue letter, dated October 16, 2002. A complaint should not be dismissed unless no relief may be granted under any set of facts that could be proved *consistent with the allegations* of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69 (1984) (emphasis added); *see also Conley*, 355 U.S. at 45-46. Further, a complaint need not anticipate defenses (and failure to exhaust administrative remedies is an affirmative defense). *Luckett*, 53 F.3d at 873. Thus, a "plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief." *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992). Of course, Plaintiffs would have been better served to settle the matter clearly by attaching a copy of that letter as an exhibit to their pleading. *See Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991) (subsequent receipt of right-to-sue letter cured deficiencies of complaint). Nevertheless, based on Plaintiffs' representation in their response brief that Williams has received a right-to-sue letter, Defendants' motion to dismiss Williams' Title VII claim is DENIED.

5. *Plaintiffs' Unfair Labor Practices Claim (Count IX)*

In Count IX of their *third amended complaint*, Plaintiffs allege that Defendants committed unfair labor practices in violation of 29 U.S.C. §§ 157 & 158. As a general rule, however, the NLRB has exclusive jurisdiction to determine whether given conduct falls within the NLRA. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 861 (7th Cir. 1998); *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 659 (7th Cir. 1992). Plaintiffs concede that the *Garmon* doctrine likely precludes their claim, but request that the Court make the dismissal without prejudice, ostensibly so the Plaintiffs can have time to investigate

whether any of the narrow exceptions to the *Garmon* doctrine apply and if so replead their claim. But Plaintiffs have already amended their complaint *three (3)* times. It was first filed on December 14, 2001—18 months prior to the date of this order. Defendants have twice pointed out to Plaintiffs the impact of the *Garmon* doctrine on this claim. *See* Mem. in Supp. of Defs.' Mot. to Dismiss Pls.' Second Am. Compl. at 5; Mem. in Supp. of Defs.' Mot. to Dismiss Pls.' Compl. at 3. Lawyers have a duty to investigate the facts that support their claim *before* filing it. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir.1989). Plaintiffs have had more than sufficient time to determine whether any exceptions to the *Garmon* doctrine exist. Defendants' motion to dismiss Count IX with prejudice is GRANTED.

6. Plaintiffs' FLSA Claim (Count X)

Defendants argue that Plaintiffs' FLSA claim is barred by the existence of the collective bargaining agreement. Where a collective bargaining agreement provides for the payment of overtime, the agreement "can and does outright preclude" a claim under the FLSA based on a violation of that agreement. *Leahy v. City of Chicago*, 96 F.3d 228, 232 (7th Cir. 1996). The reasoning is clear: if an employer agrees to compensate its employees for overtime work, and that agreement comports with (or in some cases exceeds) the requirements of the FLSA, the employer's failure to pay that overtime is not a violation of the FLSA, but a breach of the collective bargaining agreement. *See id.* (noting that "the FLSA requires no more."). But a careful reading of Plaintiffs claim shows that the facts they plead do not implicate *Leahy*. Plaintiffs plead that the parties have a collective bargaining agreement (CBA). Plaintiffs also plead that "Defendants . . . are required to compensate employees who work in excess of 40 hours per week." (Pls.' Third Am. Compl. ¶ 316). But Paragraph 316 does not state that the CBA requires Defendants to pay overtime—it is just as


reasonable to read Paragraph 316 to imply that the FLSA requires Defendants to compensate Plaintiffs for overtime work. Furthermore, Plaintiffs go on to allege that Defendants also violated the FLSA by requiring them to work in excess of 2,240 hours in a 52-week period and 171 hours in a 28-day period without overtime compensation. The Court will not speculate on whether the CBA governed the payment of overtime in such cases. Defendants' motion to dismiss Count X is DENIED. Defendants, of course, remain free to raise this issue on summary judgment or at trial should the factual record indicate that the CBA does specify the precise conditions under which overtime pay should be distributed to Plaintiffs on a weekly, monthly, and yearly basis.

7. Punitive Damages in Plaintiffs' FMLA Claim (Count XI)

Finally, Defendants point out to the Plaintiffs (for the second time, see Mem. in Supp. of Defs.' Mot. to Dismiss Pls.' Second Am. Compl. at 7) that punitive damages are not an available remedy under the FMLA. *See* 29 U.S.C. § 2617(a). Plaintiffs now concede that Defendants' position is accurate, and the Court strikes the portion of Plaintiffs' complaint seeking punitive damages under the FMLA.

8. Rule 11

On a final note, the Court issues a comment on the quality of the briefing by the parties. This case is a poster-child for unnecessarily protracted litigation. The parties spent the first 16-months of litigation engaging in a seemingly never-ending cycle of motions to dismiss followed by amended complaints. When all was said and done the parties essentially *agreed* on 3 of the 7 issues raised by the Defendants in the motion to dismiss—and yet each of those three issues were fully briefed, unnecessarily wasting the Court's time. But even with regard to those issues that the parties dispute, the quality of the briefing is unacceptable—prolonging the process further. A few examples should

9

suffice. Each parties' brief are littered with typographical errors. Carelessness can have a dramatic impact on the claim. For example, what if Plaintiffs' failure to mention Williams' right-to-sue letter in the complaint was a typographical error? If so, that typographical error caused Defendants to move to dismiss Williams' claim—ultimately wasting the resources of both the litigants in briefing the motion and the Court in ruling on it. Defendants' typographical errors are more problematic. Defendants argue that paragraph 274 of Plaintiffs' third amended complaint admits that Defendants are required to compensate employees who work in excess of 40 hours per week. But Paragraph 274 of Plaintiffs' third amended complaint is a paragraph of incorporation relating to Plaintiffs' equal protection claim, not their unfair wage claim. The Court counted no less than three such errors—each of which required the Court to scour Plaintiffs' third amended complaint to locate the paragraph to which the Defendants referred. No doubt Defendants merely recycled one of the previous motions to dismiss that referred to a paragraph in an earlier complaint. Such work is sloppy to say the least (and yet another reason why the monotonous cycle of motions to dismiss followed by amended complaints served little purpose other than to needlessly protract the litigation). A second example, alluded to earlier in the opinion: both parties' representations of the continuing violation doctrine are horribly inaccurate. Indeed, Defendants' representation is plain wrong. Local Rule 83.53.3 requires that a lawyer " [i]n appearing in a professional capacity before a tribunal . . . shall not: (1) make a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false." Local Rule 83.53.1 mandates that "a lawyer shall not bring or defend a proceeding . . .unless there is a basis for doing so that is not frivolous." Because Defendants' knew (they were told once before: *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001)) that the continuing violation doctrine *does apply* to §§ 1981 and 1983 claims and because Defendants made no argument to modify or reverse

10

that rule, their argument with regards to Plaintiffs' continuing violation theory arguably runs afoul of these two rules. Plaintiffs skate on thin ice as well. Lawyers must make reasonable investigations of the law in support of their claim. Fed. R. Civ. P. 11; *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 822 (7th Cir. 2001); *Mars Steel Corp.*, 880 F.2d at 932. In Plaintiffs' *third* amended complaint, they advance two claims that they now admit have no basis under the law— their NLRA claim, which as explained above is barred by the *Garmon* doctrine, and their claim for punitive damages under the FMLA. Plaintiffs speculate that the "punitive damages" portion of their claim was "included in error." But Plaintiffs amended their complaint *three* times. Defendants filed *two* previous motions to dismiss—both of which informed the Plaintiffs that the *Garmon* doctrine preempted their NLRA claim and one of which informed them that punitive damages were not available under the FMLA. And yet Plaintiffs nonetheless never corrected the alleged "errors" and continued to include the meritless (and frivolous) claims in each of their amended complaints.

The quality of work, from both parties, is worse than simply careless or sloppy. It is sanctionable. The Court warns counsel that should future pleadings continue to take positions that so flagrantly violate the rules of professional conduct it will impose sanctions under Rule 11.
IT IS SO ORDERED.

6/13/03
Dated

The Honorable William J. Hibbler
United States District Court